666 P.2d 524

Charles Arthur GAUNT,
Plaintiff-Appellant,

v.

MOTOR VEHICLE DIVISION, DEPART-
MENT OF TRANSPORTATION,
STATE OF ARIZONA, Defendant-Ap-
pellee.

No. 1 CA–CIV 5892.

Court of Appeals of Arizona,
Division 1, Department D.

March 31, 1983.

Rehearing Denied May 11, 1983.

Review Denied June 30, 1983.

Harold Riddel, Phoenix, for plaintiff-ap-
pellant.

Robert K. Corbin, Atty. Gen. by John L. Jones, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

MEYERSON, Judge.

Two issues are presented in this appeal from the suspension of appellant's driving license pursuant to Arizona's implied consent statute. A.R.S. § 28–691. First, will a motorist's mistaken belief that he has the right to see an attorney prior to deciding whether to take a breath test excuse his refusal to take the test? Second, under what circumstances, if any, will a subsequent consent to take the test excuse the initial refusal? We decide these issues in favor of the appellee and affirm the judgment.

## I. FACTS

The facts in the case are as follows. Appellant Charles Arthur Gaunt was arrested after an automobile accident for driving under the influence of alcohol in violation of A.R.S. § 28–692. He was given his *Miranda* warnings and was then brought to the police station by Officer Glenn J. Vaccaro.

At the station, Vaccaro requested that Gaunt submit to a breath test. Vaccaro asked for compliance three times, and three times Gaunt refused. The officer prefaced each request by reading the following to Gaunt from an implied consent form.* Gaunt was advised that his license would be suspended if he refused to take the breath test and that his silence would constitute a refusal. He was told that he had no right to an attorney with regard to his decision on whether or not to take the test. On the first two denials, Gaunt merely said "No."

When Vaccaro asked him why he stated "If I can't have my lawyer here, I refuse to take the test." The officer then re-read the section regarding the right to an attorney, but Gaunt refused to talk further.

Gaunt was brought to the station at about 1:30 a.m. Vaccaro spent approximately an hour with him, booking him and trying to get him to take the test. Then the officer placed him in a cell and left the station. Gaunt was in his cell for 30–60 minutes, until his parents bonded him out. He was then released from his cell and was in the process of getting back his personal belongings when he began a discussion with a police aide. They discussed the effects of his failure to take the test, whereupon Gaunt decided he wanted to take the test. He told the aide of his change of decision, but she said it was "too late." Gaunt then left the station.

Officer Vaccaro filed an affidavit reporting Gaunt's refusal to take the breath test with appellee Motor Vehicle Division, Department of Transportation (MVD). A hearing was scheduled, at which MVD's hearing officer decided the matter adversely to Gaunt and suspended his driving privileges for the statutory period. The hearing officer concluded that because Gaunt had been released from custody and was no longer under arrest, he was not entitled to take the breath test.

The matter was appealed to the superior court pursuant to the Administrative Review Act. A.R.S. §§ 12–901–914. The trial court sustained the suspension order and denied Gaunt's motion for new trial. Gaunt appealed from the judgment and the formal written order denying a new trial.

---

* The actual text of what was read to Gaunt is as follows:

1. A.R.S. § 28–691, as amended, requires you to submit to a chemical breath test to determine the alcoholic content of your blood. If you refuse to submit to this test, your right to drive will be suspended .... I am, therefore, requesting you submit to a breath test.

2. Those rights of which you have just been advised, that is the right to remain silent or to speak with an attorney, have an attorney present during questioning, or to have one appointed for you, do not apply to this request.

3. If you remain silent, your silence will be considered a refusal to take the test. Likewise, you are advised that regardless of what an attorney may advise you regarding submission to this test, if you refuse to take the test, your right to drive will still be suspended ....

## II. MISTAKEN BELIEF

In *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971), the Arizona Supreme Court held, *inter alia,* that a motorist arrested for driving while intoxicated does not have a right to counsel in deciding whether to take the intoxication test. In *McNutt v. Superior Court,* 648 P.2d 122, 125 n. 2 (1982), the supreme court held that the defendant did not have the right to delay the taking of the test by demanding to consult with counsel.

In this case, however, we are faced with an issue not previously presented—under what circumstances, if any, will the motorist's belief that he has the right to see an attorney prior to deciding whether to take the test, excuse his refusal to take the test. Some courts have held that where the motorist has become confused by the *Miranda* warnings and demands to talk to an attorney to decide whether to take the test, this "refusal" does not constitute a refusal such as to suspend the motorist's license. *See, e.g., Rust v. Department of Motor Vehicles,* 267 Cal.App.2d 545, 73 Cal.Rptr. 366 (1968); *Calvert v. State,* 184 Colo. 214, 519 P.2d 341 (1974); *State v. Severino,* 56 Hawaii 378, 537 P.2d 1187 (1975); *Swan v. Department of Pub. Safety,* 311 So.2d 498 (La.Ct.App. 1975). Gaunt relies on these cases to argue that his "refusal" was excusable. We disagree.

■ These cases are clearly distinguishable because in those cases the police failed to explain that there was no right to consult with counsel prior to submitting to the test. As stated in *Calvert:*

> Here Calvert was given the *Miranda* warnings and he manifested his desire to call his attorney before deciding whether or not to submit to the test. Calvert was not told that he had no such right. Under these circumstances, *Calvert should have been advised that the right to remain silent does not include the right to refuse to submit to the test or the right to prior consultation with an attorney.*

184 Colo. at 218, 519 P.2d at 343 (emphasis added). Where the defendant, however, after showing confusion, is clearly and un-

equivocally told that he has no right to talk to an attorney before submitting to a test, his further non-compliance constitutes a refusal such as to justify suspension. *See Reirdon v. Director, Department of Motor Vehicles,* 266 Cal.App.2d 808, 72 Cal.Rptr. 614 (1968); *Herren v. Motor Vehicle Division,* 39 Colo.App. 146, 565 P.2d 955 (1977); *Spradling v. Deimeke,* 528 S.W.2d 759 (Mo. 1975); *Agnew v. Hjelle,* 216 N.W.2d 291 (N.D.1974).

■ We believe the record shows that Officer Vaccaro adequately explained Gaunt's rights to him. Each time the officer requested Gaunt to take the test, he read the admonitions from the implied consent form. Even after the third refusal, Vaccaro again read the paragraph explaining there is no right to an attorney before deciding whether to submit to the test, but received no response from Gaunt.

We hold that the police adequately discharged their duty to warn Gaunt and that any reasonable person, under the circumstances, should have understood that he was not entitled to consult with an attorney before deciding whether to submit to the test. *See Beck v. Cox,* 597 P.2d 1335, 1339 (Utah 1979). Appellant's failure to submit to the test was therefore a refusal under the statute.

■ One further argument by Gaunt is that he was so intoxicated that he could not comprehend how his *Miranda* rights related to the implied consent law and therefore he did not make a knowing and intelligent refusal. Regardless of the degree of voluntary intoxication or the lack of understanding resulting therefrom, when an arrested motorist refuses to take the test, he is subject to suspension of his license. *See, e.g., Bush v. Bright,* 264 Cal.App.2d 788, 71 Cal.Rptr. 123 (1968); *State v. Normandin,* 284 Minn. 24, 169 N.W.2d 222 (1969); *Hoban v. Rice,* 25 Ohio St.2d 111, 267 N.E.2d 311 (1971). To accept Gaunt's defense would have the anomalous result that the greater the degree of intoxication of the motorist, the lesser the degree of his accountability. *Carey v. Melton,* 64 A.D.2d

983, 408 N.Y.S.2d 817 (1978); *In Re Schuttler,* 262 N.W.2d 61 (S.D.1978).

## III. CONSENT SUBSEQUENT TO INITIAL REFUSAL

Gaunt's second argument is that he did in fact consent to take the test prior to leaving the police station and that his consent constituted at least substantial compliance with the implied consent statute. MVD argues there was no consent because (1) Gaunt's initial refusal could not be cured by a subsequent consent and (2) his consent was too late where the arresting officer had already left the station.

No Arizona opinions have considered the circumstances, if any, under which a delayed consent may excuse an initial refusal. This issue has been the subject of extensive litigation throughout the United States. *See generally 3 R. Erwin, Defense of Drunk Driving Cases,* § 33.06 (3d ed. 1982) (Erwin); Annot., 88 A.L.R.2d 1064 (1963). The majority rule appears to be that where an arrested motorist is offered an intoxication test and at first refuses to submit, but subsequently changes his mind and requests to take the test, his conduct nevertheless constitutes a refusal. These courts reason that once the defendant refuses, his decision is final and there can be no subsequent effective recantation of the refusal. *Zidell v. Bright,* 264 Cal.App.2d 867, 71 Cal.Rptr. 111 (1968); *People v. Shorkey,* 23 Ill.App.3d 662, 321 N.E.2d 46 (1974); *Krueger v. Fulton,* 169 N.W.2d 875 (Iowa 1969); *Harlan v. State,* 113 N.H. 194, 308 A.2d 856 (1973).

Other courts have adopted the more flexible rule that subsequent consent cures the prior refusal unless the delay would materially affect the test result, or would substantially inconvenience the police. *Zahtila v. Motor Vehicle Div.,* 39 Colo.App. 8, 560 P.2d 847 (1977) (consent given 25 minutes after refusal); *State v. Moore,* 62 Hawaii 301, 614 P.2d 931 (1980) (consent given 13 minutes after refusal); *Sedlacek v. Pearson,* 204 Neb. 625, 284 N.W.2d 556 (1979) (test given two hours after refusal); *Lund v. Hjelle,* 224 N.W.2d 552 (N.D.1974).

[T]he subsequent consent to take the test cures the prior first refusal when the request . . . is made within a reasonable time after the prior first refusal; when such a test . . . would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test . . . will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

*Id.* at 557. We find the so-called minority rule to be "more logical and fair." Erwin, § 33.06 at 33–78. Although an absolute rule preventing a subsequent consent after an initial refusal has the advantage of granting unmistakable clarity to the defendant's obligation under the implied consent law, it could lead to unnecessarily harsh and self-defeating results. It is not hard to imagine circumstances where the defendant, soon after declining to take the breath test, has second thoughts. If the test results would remain valid, and if no material inconvenience is caused to the police, we fail to see the harm in permitting the defendant to subsequently consent to take the test.

The breath test results could be an essential part of the state's case against the arrested motorist (or part of motorist's defense). By approving a flexible rule we believe that this important evidence will be more frequently available and therefore the prophylactic purpose of the implied consent law will be achieved. *See Campbell v. Superior Court,* 106 Ariz. at 546–47, 479 P.2d at 689–91. "[T]he inference of intoxication arising from a positive . . . test is far stronger than that arising from a refusal to take the test." *South Dakota v. Neville,* —— U.S. ——, ——, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983).

MVD argues that the supreme court's holding in *Campbell v. Superior Court* supports the more strict majority view:

It is the opinion of this court that a refusal to submit to the test occurs where the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believ-

ing that such motorist was capable of refusal and manifested an unwillingness to submit to the test.

106 Ariz. at 553, 479 P.2d at 696. *See* A.R.S. § 28–691.D. The foregoing language in *Campbell* is broad enough to permit adoption of the rule discussed herein. *Campbell* also must be considered in context. The court was not presented with a case such as this—subsequent reconsideration by a defendant of the initial refusal to consent to the test.

 Thus, we hold that a subsequent consent should be honored except under the following circumstances. The consent may not be made after the defendant is no longer in custody. Prior to that point, the subsequent consent need not be honored where (1) it would result in substantial inconvenience or expense to the police; or (2) the testing equipment is not readily available; or (3) the test results would not be accurate. If any one of the above conditions is not met the test need not be given. Thus, because Gaunt was released from custody, his change of heart came too late.

For the foregoing reasons, the judgment is affirmed.

HAIRE, P.J., and EUBANK, J., concur.