728 P.2d 685

**Phillip Gregory NOLAND, Petitioner-Appellee,**

v.

**STATE of Arizona, DEPARTMENT OF TRANSPORTATION, Respondent-Appellant.**

**No. 1 CA–CIV 8245.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 18, 1986.

Reconsideration Denied Nov. 6, 1986.

Robert K. Corbin, Atty. Gen. by Bryan B. Perry, Phoenix, for respondent-appellant.

Glynn W. Gilcrease, Jr., Tempe, for petitioner-appellee.

ALLEN G. MINKER, Judge.

In *Gaunt v. Motor Vehicle Div., Dept. of Transp.*, 136 Ariz. 424, 666 P.2d 524 (App.1983), this court held that a motorist who first refused a blood alcohol test but subsequently requested to take the test might avoid license suspension under Arizona's implied consent statute, A.R.S. § 28–691. The *Gaunt* court held that a first refusal could be recanted if the motorist was still in custody when he requested to take the test and (1) it would not result in substantial inconvenience or expense to the police; (2) the testing equipment was readily available; and (3) the test results would be accurate.

In the present case, appellee Phillip Gregory Noland first refused a blood alcohol test, then requested to take it, then refused and requested it a second time. Phoenix patrol officer A.J. Stallman stopped Noland on March 5, 1984, in Phoenix driving the wrong way on a one-way street. The officer smelled the odor of intoxicants on Noland's breath. After Noland performed the field sobriety test in a manner unsatisfactory to the officer, he was arrested and taken to the Sky Harbor substation where a "G.C.I." machine and operator were present. Following the prescribed observation period, Stallman read Noland the implied consent law and asked him to submit to a test. Stallman testified that Noland asked him questions about the law, such as "what would happen [to his license] after the time limits—stuff like this." Officer Stallman told Noland he was not a lawyer. Noland refused the test. Officer Stallman again explained to Noland that if he refused, he would lose his license for one year. Noland said he understood,

and again refused. The officer then placed Noland in a holding cell in another section of the substation and began his paperwork. Seven to ten minutes later, Noland asked again about the test, saying it would probably be a good idea to take it. Both Officer Stallman and the G.C.I. operator went to the holding cell and offered Noland a second chance to take the test. After some discussion, Noland again refused.

Officer Stallman then took about ten to fifteen minutes to complete his paperwork and issue citations to Noland. Just as Noland was released and in or near the lobby area, Noland yelled that he wanted to take the test. The G.C.I. officer was still present but off duty. The machine was present and operable. Officer Stallman this time refused. Officer Stallman testified that he informed Noland "he already had two chances and we can't wait all night for him to decide."

Noland, his attorney and Officer Stallman appeared before a hearing officer of the Motor Vehicle Division of the Arizona Department of Transportation. After hearing testimony and argument and after a discussion of the *Gaunt* case, the hearing officer ruled that *Gaunt* did not apply to a situation where there were two or more refusals/requests to take a blood alcohol test. He ordered Noland's license suspended for one year.

Noland appealed to the superior court, which reversed the decision of the hearing officer. The superior court found no such limitation in *Gaunt* and found all the conditions in *Gaunt* satisfied. From the superior court reversal, the State of Arizona, Department of Transportation, appeals to this court.

The State Department of Transportation (DOT) entreats this court to overrule *Gaunt*. DOT argues that *Gaunt* represents the minority view and that once a motorist refuses a test there is no rule of recantation that will provide an accurate test result. We find no argument here that was not addressed by the *Gaunt* decision and no reason to cast overboard this recent opinion. *Gaunt* requires any subsequent recantation, if it be effective, be within such time as to still render an accurate result. One strong consideration behind the *Gaunt* decision is to obtain the benefit of dependable scientific evidence whenever possible. This evidence directly assists the determination of guilt or innocence. This policy consideration has not changed, and DOT has failed to show a debilitating flaw in *Gaunt*.

With the *Gaunt* decision before him, the hearing officer determined that this case was beyond the imagination of *Gaunt*. Were we to adopt this ruling, we would hold that while *Gaunt* applies to one refusal/request, one is the limit and a second refusal can never be recanted. This would mean that where a motorist changes his mind twice—even in the space of seconds and while still standing in front of the machine—the test would not be given. Because *Gaunt* itself contains the guidelines to deal with the present situation, we feel it unnecessary to adopt a rule automatically limiting *Gaunt*.

In addition to requiring the test be accurate, *Gaunt* requires that a subsequent request to take the test not result in substantial inconvenience or expense to police. In determining whether this condition is met, the hearing officer may consider and weigh an earlier refusal/request change of heart. We can envision a wide variety of change of heart situations with motorists vacillating between refusal and consent to a test. We believe that the conditions required by *Gaunt* provide the flexibility to deal with each properly.[1]

■ We also hold that the burden of proof before the hearing officer as to the *Gaunt* conditions should be on the motor-

---

1. Should a motorist's change of heart amount to · game-playing rather than genuine indecision, there would be no recantation because the conduct would still amount to a refusal. *Campbell* *v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971); *Willis v. State,* 145 Ariz. 302, 701 P.2d 10 (App.1985).

ist.[2]  Other jurisdictions have placed the burden on the motorist to show the time delay has not affected accuracy. *State v. Moore*, 62 Haw. 301, 614 P.2d 931 (1980); *Zahtila v. Motor Vehicle Div., Dept. of Revenue*, 39 Colo.App. 8, 560 P.2d 847 (1977).  We hold that the motorist should bear the burden of proof by a preponderance of the evidence as to each of the *Gaunt* conditions.  We find no unfairness in this, since it was the motorist whose verbal choice caused the situation to occur.

 "Substantial inconvenience," which the hearing officer will determine, is not a term which lends itself to precise definition.  It must be more than mere inconvenience, such as an officer already having begun his paperwork.  The most typical application of "substantial inconvenience" will be the case in which officers must stop other significant police activities to attend to the blood alcohol test.  When there has been an earlier refusal/request by the motorist, the finder of fact may place greater weight on such factors as the distance to the detained motorist and machine, the significance of the interrupted activity, and any demoralizing effects upon police personnel.

*Gaunt* envisions that a rule of reasonableness prevail, with a preference for administering the test.  We see no reason why *Gaunt* cannot deal with all aspects of the instant case.

 The hearing officer in this case made no findings of fact as to whether the conditions set forth in *Gaunt* were satisfied.  The superior court did, finding all the conditions were met.  In doing so, the superior court exceeded the bounds of review under A.R.S. §§ 12–901 to 12–914.  In *Smith v. Arizona Dept. of Transp.*, 146 Ariz. 430, 706 P.2d 756 (App.1985), the limits of administrative review by the superior court were set forth.  The superior court may not substitute its weighing of the evidence for that of the administrative agency.  Only when there is no substantial evidence to support the agency's decision may reversal be based on insufficiency of evidence.  Here, the hearing officer never made a finding of fact as to "substantial inconvenience" or any of the other factors.

The superior court when hearing an appeal from administrative proceedings must have an adequate record to review. *Schmitz v. Arizona State Bd. of Dental Exam.*, 141 Ariz. 37, 684 P.2d 918 (App. 1984).  Only when it is impossible to find but one set of facts from the evidence should the superior court determine the facts where the hearing officer has failed to do so.  We have not been convinced that is the case here.  The judgment of the trial court is reversed, and this matter is remanded with directions that the trial court remand the cause to the Department of Transportation for further proceedings consistent with this opinion.  The Department of Transportation shall be directed to make appropriate factual findings and, based thereon, redetermine whether appellee's driver's license should be suspended.

GRANT, P.J., and BROOKS, J., concur.

NOTE: The Honorable ALLEN G. MINKER of the Greenlee County Superior Court, State of Arizona, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, Pursuant to Ariz. Const. Art. VI, § 3.

---

2.  The burden of proof to show there was probable cause to arrest the motorist for DWI and that the motorist was properly informed of and first refused a blood alcohol test, of course, remains with the state. *Campbell v. Superior Court, supra.*