988 P.2d 128

Betty K. KOLLER, Plaintiff–Appellee,

v.

ARIZONA DEPARTMENT OF TRANS-
PORTATION, MOTOR VEHICLE DIVI-
SION, an administrative agency of the
State of Arizona; and State of Arizona,
real party in interest, Defendants–Appel-
lants.

No. 1 CA–CV 98–0310.

Court of Appeals of Arizona,
Division 1, Department A.

March 9, 1999.

Review Denied Oct. 26, 1999.

Janet A. Napolitano, The Attorney General By John C. Dutton, Assistant Attorney General, Transportation Section, Phoenix, Attorneys for Appellant.

Thomas A. Scarduzio, Jr., Phoenix, Attorney for Appellee.

## OPINION

TOCI, Judge.

¶ 1 After a hearing, an administrative law judge ("ALJ") entered an order suspending plaintiff Betty Koller's ("Koller's") driver's license for refusing to take a breath test under Arizona's implied consent statute, Arizona Revised Statutes Annotated ("A.R.S.") section 28–691.[1] The trial court reversed the ALJ's suspension order. The Motor Vehicle Division of the Arizona Department of Transportation ("MVD") now seeks reversal of the trial court's judgment.

¶ 2 The issues presented are (1) whether a trial de novo is mandatory under A.R.S. section 12–910(C) (Supp.1997) when the administrative hearing was recorded but a transcript is unavailable because the tape recording was lost, and (2) whether Koller could effectively recant her refusal to take a breath test, thereby avoiding suspension of her driver's license, after the city court judge issued a search warrant for a blood sample. We hold that a trial de novo is required and that because Koller did not establish that she recanted before the warrant was issued, her recantation was ineffective to prevent suspension of her license. We therefore reverse.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3 Koller was arrested in July 1996 for DUI. At the scene, Officer Randal Fougner read to Koller from an implied consent form, which notified her that if she refused to submit to a breath test, her driver's license would be suspended for twelve months. When Fougner asked Koller to submit to a test, she refused. Fougner again explained to her that if she refused, she would lose her license. Fougner reported that she responded, "We'll see. I want to call my attorney." Another officer then transported Koller to the police station.

¶ 4 When Fougner arrived at the station, he again asked Koller to take a breath test. After she refused, he placed her in a holding cell for approximately thirty to forty minutes while he obtained a search warrant for a blood sample. After Fougner served the warrant on Koller, he transported her to Tempe St. Luke's Hospital, where her blood was drawn for testing. Test results indicated that her blood alcohol concentration was .20. She later was released from custody approximately two and one-half hours after the initial stop.

¶ 5 At the MVD license suspension hearing, the ALJ found that Koller's testimony "lack[ed] credibility" and that she failed to meet her burden of proving that she recanted her refusal to take the breath test. Accordingly, the ALJ ordered that her driver's license be suspended for twelve months. Koller appealed the ALJ's decision to the superior court pursuant to the Administrative Review Act. See A.R.S. §§ 12–901 through 12–914 (1992).

¶ 6 The trial court stayed the license suspension until final disposition of the matter. Koller thereafter moved for a trial de novo under A.R.S. section 12–910(C) on the grounds that the tape recording of the MVD hearing had been misplaced and, as a result, no transcript could be made for the trial

1. Renumbered as A.R.S. § 28–1321 (1998).

court to review. The MVD opposed the motion, arguing that A.R.S. section 12–911(A)(7) (1992) gives the court discretion to remand the case for another hearing. Koller also moved to amend her complaint to add a demand for a trial de novo. *See* A.R.S. § 12–910(C); Ariz. R. Civ. P. 15(a)(1). The trial court granted Koller's motions.

¶ 7 Following a bench trial held on February 13, 1998, the trial court found that Koller recanted her refusal. The court reversed the ALJ's decision and voided the twelve-month license suspension. The MVD timely appealed from the judgment.

## II. DISCUSSION

### A. Trial de Novo Under A.R.S. Section 12–910(C)

■ ¶ 8 Issues of statutory interpretation are issues of law; our standard of review therefore is de novo. *See Lewis v. Arizona Dep't of Econ. Sec.*, 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996).

■ ¶ 9 In granting Koller's motion for a trial de novo, the trial court stated that it felt "compelled by the holding in *Schmitz v. Arizona Board of Dental Examiners*, 141 Ariz. 37, 40–41, [684 P.2d 918, 921–22] (App.1984) ... that 'A.R.S. § 12–910[C] provides that the trial ... *shall* be de novo if a trial de novo was demanded and the proceedings were not reported so that a transcript might be made.'" The MVD argues on appeal that A.R.S. sections 12–911(A)(7)[2] and 28–3317 (1998)[3] provide discretion to the trial court to remand cases for a hearing when transcripts cannot be generated. We are not persuaded.

**2.** Section 12–911 provides that the superior court may, "[w]hen a hearing has been held by the agency, remand for the purpose of taking additional evidence when from the state of the record of the administrative agency or otherwise it appears that such action is just."

**3.** A.R.S. § 28–3317 was formerly numbered A.R.S. § 28–451. Although the MVD cites § 28–451 in its brief, § 28–3317 was in effect at the time Koller filed her motion for a trial de novo. In any event, the two sections are substantively identical. Section 28–3317 provides:

Unless the [driver's license] cancellation or revocation is mandatory under this chapter, a person who is denied a license or whose li-

¶ 10 Arizona Revised Statutes Annotated section 12–910(C) applies to a review of a final administrative decision of the MVD and provides that "the trial shall be de novo if trial de novo is demanded in the complaint ... and if ... the proceedings before the agency were not stenographically reported or mechanically recorded so that a transcript might be made." In *Schmitz*, the plaintiff requested a trial de novo following an Arizona State Board of Dental Examiners' decision on the grounds that although a transcript had been made, it contained numerous "inaudible" designations as well as statements and questions by unnamed persons and therefore was insufficient to serve as a basis for judicial review. 141 Ariz. at 40, 684 P.2d at 921. In its analysis, this court reasoned that whether the plaintiff was entitled to a trial de novo "depends on the sufficiency of the transcript.... The threshold question is whether the record is complete enough to reflect a basis for the board's decision so as to enable a meaningful judicial review." *See id.* The court concluded that the record before it was so insufficient that it "defie[d] intelligent consideration." *See id.* at 41, 684 P.2d at 922.

¶ 11 Here, the complete lack of a transcript precludes any judicial review whatsoever. A lost tape has the same effect as a hearing that was "not stenographically reported or mechanically recorded," *see* A.R.S. section 12–910(C), that is, in each of these cases, a transcript cannot be produced for review.

¶ 12 Like the board in *Schmitz*, the MVD argues that the trial court could have re-

cense is canceled, suspended or revoked by the department may seek judicial review pursuant to title 12, chapter 7, article 6, except that § 12–910, subsections A, B, D and E do not apply.

. . . .

The court hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. The court shall not hear new or additional evidence in support of or in opposition to a finding, order, determination or decision of the department, except in cases in which, in the discretion of the court, justice demands the admission of new or additional evidence.

manded the matter for another hearing pursuant to A.R.S. section 12–911(A)(7). The *Schmitz* court rejected this argument, noting that the board "was responsible for preparing an adequate transcript" of the proceedings. *See Schmitz*, 141 Ariz. at 41, 684 P.2d at 922 (citing A.R.S. §§ 41–1009(F) (now 41–1061(F)) and 12–909(B)). The court stated that "A.R.S. § 12–910[C] provides that the trial *shall* be de novo if a trial de novo was demanded and the proceedings were not reported so that a transcript might be made. The Administrative Review Act ... does not require, in the absence of an adequate record, that an individual must first seek a remand to the agency...." *See id.* (citations omitted).

¶ 13 Here, the MVD was responsible for securing the tape recording so that a transcript could be produced for review on appeal. Because the MVD could not produce the recording for transcription and because Koller requested a trial de novo in her amended complaint, A.R.S. section 12–910(C) *required* a trial de novo. *See id.*

¶ 14 Finally, the MVD argues that A.R.S. section 28–3317 allows the trial court to remand for another hearing. This argument ignores the language of section 28–3317 that a person whose license has been suspended may seek judicial review "except that § 12–910, subsections A, B, D and E do not apply." Because no exception exists in section 28–3317 for section 12–910, subsection C, and subsection C mandates a trial de novo, the MVD's argument is without merit.

## B. Issuing of the Search Warrant

¶ 15 The second issue on appeal is whether Koller effectively recanted her refusal to submit to a breath test. To decide that issue, we must determine if the Arizona implied consent law is affected by the 1990 amendment that allows a search warrant for a blood sample following a driver's refusal to submit to a chemical test. *See* A.R.S. § 28–1321(D)(1).[4] We hold that, because of the legislative changes to the implied consent law, a driver cannot prevent a license revocation by recanting his refusal to agree to a chemical test after a search warrant for a

blood sample is issued. Here, because Koller did not establish that she recanted her refusal before the search warrant issued, her attempted change of mind was ineffective to prevent the suspension of her license.

¶ 16 The nature and scope of a de novo review of administrative agency orders depend upon the presence or absence of any statutorily imposed restrictions. *See Herzberg v. State ex rel. Humphrey*, 20 Ariz.App. 428, 431, 513 P.2d 966, 969 (1973). De novo review under A.R.S. section 12–910(C) is unrestricted. Consequently, the trial court hears the matter "the same as though it were an original proceeding upon evidence introduced in [that] court, and with [that] court making an entirely independent determination unfettered by presumptions created by the decision of the administrative agency." *Herzberg*, 20 Ariz.App. at 431, 513 P.2d at 969. It follows that as a reviewing court, we will sustain the trial court's findings unless they are arbitrary, capricious or an abuse of discretion. *See Carondelet Health Serv. v. Arizona Health Care Cost Containment Sys. Admin.*, 187 Ariz. 467, 469, 930 P.2d 544, 546 (App.1996). We determine only whether those findings are supported by substantial evidence. *See id.* We may, however, draw our own legal conclusions and determine whether the trial court erred in its interpretation of the law. *See id.*

¶ 17 We turn first to the evidence introduced at trial. After Koller refused to submit to a breath test for the second time, Fougner placed Koller in a holding cell a few minutes after 3:00 a.m. Exhibit 2 in evidence indicates that Fougner read to Koller from the Tempe Police Department form which stated that upon refusal to take a chemical test of the officer's choice a magistrate would be contacted "to obtain a search warrant for your blood." The form also advised that "if a magistrate grants a search warrant, we will have a court order and you will no longer have the right to refuse the requested chemical tests." The form contains both Koller's and Fougner's names and the date of the arrest.

4. Formerly 28–691(D).

¶ 18 Fougner left Koller in a holding cell and proceeded to obtain a search warrant permitting the withdrawal of Koller's blood. The record indicates that Fougner telephoned the city court judge at 3:20 a.m. After Fougner complied with the legal requirements for issuing a telephonic search warrant, the judge issued the warrant at 3:26 a.m. Fougner served the warrant on Koller at 3:40 a.m., fourteen minutes after it was issued. When Fougner came to the holding cell to serve the warrant, Koller said that a warrant was not necessary and that she would take the test.

¶ 19 Koller testified that after Fougner put her in the holding cell, he went to obtain the warrant. She stated that while he was gone, another officer brought a prisoner to the holding cell. According to Koller, either at the time the second officer put the prisoner in the cell or later when the officer removed the prisoner, she asked the second officer what had happened "to my arresting officer." After the officer explained why Fougner had gone to get a warrant she told this officer that she would "give a sample, whatever." On appeal, Koller asserts that this offer to take a breath test negates her prior refusal and prevents the suspension of her license. Koller does not, however, point to any evidence establishing that her offer preceded the issuance of the warrant.

¶ 20 Fougner acknowledged that it would not have been a substantial inconvenience to administer the breath test when he returned with the warrant and that the testing equipment was located approximately forty to fifty feet from the cell. He agreed that the test results would not have been affected because the time was still within two hours of driving.

¶ 21 In a February 18, 1998 minute entry, the trial court found that Koller had carried her burden under *Noland v. State Department of Transportation*, 151 Ariz. 466, 728 P.2d 685 (App.1986), and *Gaunt v. Motor Vehicle Division, Department of Transportation*, 136 Ariz. 424, 666 P.2d 524 (App.1983). The court voided the license suspension, specifically finding that

> the Plaintiff was in custody at the time she recanted her refusal to take the breath test and that administering the test would

not have resulted in substantial inconvenience or expense to the police. The Court also rejected the State's argument that because the arresting officer had, after the Plaintiff's first refusal, spent approximately 30 to 40 minutes obtaining a search warrant to seize her blood, that constituted the type of "substantial inconvenience" alluded to by the Court in *Gaunt*. This Court determined that the test set forth in *Gaunt* requires a determination by the Court as to whether, at the time the refusal is recanted by the driver, it would, at that time, constitute a "substantial inconvenience" were the police to provide a breath test to the driver.

> . . . .

> The Court finds that the driver did, in fact, recant her refusal and demonstrated a desire to take the test which was rejected by the police department. Therefore, the Court finds the holding in *Gaunt* permitting recantation of a refusal applies. . . .

¶ 22 In *Gaunt*, the driver refused several requests to take a breath test. After he was released from custody, he asked to take the test but was informed that it was "too late." 136 Ariz. at 425, 666 P.2d at 525. This court held that a driver who first refused a breath test could recant the refusal and avoid license suspension under the implied consent statute if the driver was still in custody at the time of the recantation and (1) the subsequent consent would not result in substantial inconvenience or expense to the police, (2) the testing equipment was readily available, and (3) the test results would be accurate. *See id.* at 428, 666 P.2d at 528. Later, in *Noland*, this court found that *Gaunt* could apply to allow recantation when a driver refused and requested a test more than once. *Noland*, 151 Ariz. at 468, 728 P.2d at 687. The court did not reach the merits of the case but remanded the matter so that the MVD could make appropriate findings of fact.

¶ 23 When *Gaunt* and *Noland* were decided, the only consequence of a refusal to agree to a blood, breath, or urine test was the automatic suspension of a person's license. The "consent" aspect of the implied consent statute assured that no physical violence or

coercion would occur when a DUI suspect would not cooperate with police efforts to obtain chemical evidence of intoxication. *See Sherrill v. Department of Transp.,* 165 Ariz. 495, 498, 799 P.2d 836, 839 (1990). In the absence of consent, a law enforcement officer was not entitled to extract a DUI suspect's blood pursuant to a search warrant. *See Collins v. Superior Ct.,* 158 Ariz. 145, 146, 761 P.2d 1049, 1050 (1988).

¶ 24 In 1990, however, the legislature amended the implied consent statute to allow an officer to obtain a blood sample pursuant to a search warrant following a driver's refusal to submit to a blood alcohol test. *See* A.R.S. § 28–1321(D)(1); 1990 Ariz. Sess. Laws, ch. 375, § 7. The statutory provision allowing the nonconsensual taking of blood upon a judicial officer's finding of probable cause is triggered by a DUI suspect's refusal to agree to the chemical test selected by an officer.

¶ 25 We conclude that because the statute has since been amended, *Gaunt* and *Noland* do not apply after a search warrant has been issued. By the addition of section 28–1321(D)(1), the legislature has decided that the simple revocation of a driver's license for failure to consent to a chemical test is no longer a sufficient sanction to remove intoxicated drivers from the highway. The intent of this amendment and other amendments to the DUI laws is to increase the criminal penalties for DUI and to facilitate the criminal prosecution of those who drive while intoxicated.[5] *See* H.B. 2433, 39th Leg., 2d Reg. Sess. (Ariz.1990), Minutes of the Judiciary Committee, February 21, 1990.

¶ 26 Here, taking the evidence in a light most favorable to Koller, the record is devoid of any evidence that Koller changed her mind about giving a breath sample before the judge issued the search warrant at 3:26 a.m. Koller was placed in the holding cell a few minutes after 3:00 a.m. She could not remember how long she was in the holding cell before a second officer brought another prisoner to the holding cell and Koller advised

him that she would "give a sample." Nor could she remember whether her change of mind occurred when the second officer put his prisoner in the holding cell or five to ten minutes later when he removed the prisoner from that cell. The only evidence in this record that establishes the time of Koller's change of mind is the evidence that she recanted at approximately 3:40 a.m., when Fougner served the search warrant on her.

¶ 27 After her second refusal to consent to the breath test, Koller was advised that a search warrant would be obtained and that after the warrant was issued she would no longer have the right to change her mind. A search warrant is a court order. *See Linch v. Thomas–Davis Med. Ctrs., P.C.,* 186 Ariz. 545, 547, 925 P.2d 686, 688 (App.1996). Once the city court judge issued her order permitting the extraction of Koller's blood, Koller's recantation was ineffective. In the face of a court order for the extraction of blood, Koller was not free to choose to take the breath test rather than the blood test and avoid the penalty of a suspended license.

## III. CONCLUSION

¶ 28 Accordingly, we reverse the trial court's order reversing the ALJ's decision and voiding the twelve-month suspension. We remand the case to the trial court with directions to suspend Koller's driver's license for twelve months for refusing to submit to a breath test under the implied consent statute.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and CECIL B. PATTERSON, JR., Judge.

---

5. The penalties for DUI offenses have become increasingly serious: the class of felony for aggravated DUI has been upgraded from class 6 to class 4, *see* A.R.S. § 28–1383(L)(1) (Supp.1998); a first-time DUI offense may be designated as a class 6 felony if a person under the age of fifteen is in the vehicle, *see* A.R.S. § 28–1383(L)(2) (Supp.1998); and prison terms, not just jail terms, may be imposed. *See* A.R.S. § 28–1383(D) (Supp.1998).