2005-NMCA-019

108 P.3d 534

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**JADE G., a child, Defendant–Appellee.**

**No. 23,810.**

Court of Appeals of New Mexico.

Nov. 9, 2004.

Certiorari Granted, Nos. 29,016 and 29,017, Feb. 6, 2005.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellant.

John B. Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} The State appeals the suppression of statements and fingerprints of a twelve-year old juvenile facing felony charges in a delinquency proceeding. We affirm the suppression of the statements, and we remand on the suppression of the fingerprints issue with instructions that the facts and arguments on that issue be more fully developed consistent with the concerns expressed in this opinion.

## BACKGROUND

{2} Defendant Jade G. (Child) is already in the New Mexico reports. *See In re Jade G.*, 2001–NMCA–058, ¶ 2, 130 N.M. 687, 30 P.3d 376. Child is accused of murdering her father, allegedly shooting him while he slept. Child's defense is that the shooting was accidental. Suspecting that the shooting was intentional, the State intended to use Child's fingerprints and statements in proving its case.

{3} Child's fingerprints were taken pursuant to a search warrant issued by a district court judge. A match of Child's fingerprints to those on the weapon constituted a part of the evidence later used to seek a warrant for Child's arrest. The affidavit for the search warrant listed the people found at the residence, including Child, their dates of birth, and sought to obtain the latent fingerprints of each individual, along with other evidence the officer claimed was "being possessed in a manner which constitutes a criminal offense, is designed or intended for use or which has been used as a means of committing a criminal offense, and would be material evidence in a criminal prosecution." Neither the affidavit for search warrant nor the search warrant mentioned the Children's Code or alleged that Child was a delinquent child.

{4} The law enforcement officer's affidavit for the arrest warrant stated that the officer had reason to believe Child committed murder, and that the act constituted a delinquent act. A delinquency petition was filed charging first degree murder, second degree murder, and manslaughter, and Child was arraigned.

{5} Before and following the shooting, Child made statements to several relatives and neighbors. The State asserted that the statements were important to show inconsistencies between the physical evidence, such as the father's position in bed and the location of the bullet wound, and Child's view of what had occurred.

{6} In addressing Child's motions to suppress the statements and to exclude Child's fingerprints, the children's court examined the basic rights statute in the Delinquency Act, NMSA 1978, § 32A–2–14 (2003), the applicable subsections of which are:

F. Notwithstanding any other provision to the contrary, no confessions, statements or admissions may be introduced against a child under the age of thirteen years on the allegations of the petition. There is a rebuttable presumption that any confessions, statements or admissions made by a child thirteen or fourteen years old to a person in a position of authority are inadmissible.

I. A child under the age of thirteen alleged or adjudicated to be a delinquent child shall not be fingerprinted or photographed for identification purposes without obtaining a court order.

§ 32A–2–14 (F), (I).

{7} At the hearing on Child's motions, the children's court stated that the search warrant was not an "order" as contemplated under subsection (I), in that an "order" requires a motion. The court viewed issuance of a search warrant as an ex parte investigatory evidence-gathering process before indictment, noting that, when a judge signs a search warrant, the judge "is not saying that everything you collect is admissible," and describing the search warrant process as being distinct from proceedings after indictment where rules must be followed to assure a fair trial. The court viewed Section 32A–2–14(I) as carrying out the Legislature's intent that judges allow fingerprinting of a child "by issuing an order for it," and that "you don't get orders without filing motions." The court also indicated that the State had, but did not take, the opportunity to file a motion to obtain an order under Section 32A–2–14(I), and that while the court "more than likely ... would have granted the mo-

tion," the court was "not now going to give the State an order allowing the use of [Child's] fingerprints because the defense filed a motion to exclude it." The court stated: "And at the eleventh hour, I am not going to allow it when there was ample opportunity to get this done and it didn't happen." In its order suppressing Child's fingerprints, the court expressly held that the search warrant was "not a court order for purposes of [Section] 32A–2–14(I)."

{8} In regard to Child's statements, the court indicated during the hearing that the plain meaning of Section 32A–2–14(F) was that the statements were not admissible even when made in a noncustodial setting. The court entered an order suppressing Child's statements.

{9} The State asserts on appeal that the court erred (1) in ruling that a warrant is not a court order for the purposes of Section 32A–2–14(I), and (2) in its interpretation of Section 32A–2–14(F). Included in the State's Section 32A–2–14(I) point is an argument that the court abused its discretion in denying the State an opportunity to take a second set of fingerprints.

## DISCUSSION

### I. Jurisdiction

{10} Child asserts that it is not clear whether this Court has jurisdiction. According to Child, proof of Child's fingerprints is unnecessary since Child admits to accidentally shooting her father, and the statements merely corroborate the defense's case; therefore, Child argues, the order complained of does not practically dispose of the merits of the case. Although Child argues the practical finality-related issue, the only authority she cites is Rule 12–503(E) NMRA (writs of error), and *In re Larry K.*, 1999–NMCA–078, ¶¶ 4, 7–10, 127 N.M. 461, 982 P.2d 1060. *In re Larry K.* discusses, among other procedural and jurisdictional matters, the writ of error doctrine and Rule 12–503 in relation to the propriety of an immediate interlocutory appeal from an order denying a motion to strike a jury demand. *Id.*

{11} In response, the State asserts that it invoked this Court's jurisdiction under our Constitution and various statutes, namely, Article VI, Section 2 of the New Mexico Constitution, NMSA 1978, § 32A–1–17(A) (1999), and NMSA 1978, § 39–3–3(B)(2) (1972), if this case is characterized as a criminal case, and under NMSA 1978, § 39–3–7 (1966), if this case is characterized as a special proceeding.

{12} Article VI, Section 2 provides that an "aggrieved party shall have an absolute right to one appeal." The right is "applicable where the interest is especially strong." *State v. Griego*, 2004–NMCA–107, ¶ 18, 136 N.M. 272, 96 P.3d 1192; *In re Larry K.*, 1999–NMCA–78, ¶ 13. Section 39–3–7 allows interlocutory appeals to aggrieved parties in special proceedings. Section 32A–1–17(A) is in the Children's Code and allows any party to appeal as provided by law. Section 39–3–3(B)(2) allows the State to appeal within ten days from a suppression order upon certification by the district attorney to the district court "that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." The orders at issue were filed on January 15, 2003. The notice of appeal was filed on January 24, 2003, and was timely under Section 39–3–3(B)(2). The notice of appeal contains the district attorney's certification required under Section 39–3–3(B)(2).

{13} Child having made no issue of jurisdiction under Section 39–3–3(B)(2), statutes on which the State relies, we will proceed to entertain this appeal.

### II. Child's Statements

{14} Our review of the application of Section 32A–2–14(F) in connection with the suppression of Child's statements is de novo. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) ("Interpretation of a statute is an issue of law, not a question of fact.").

{15} The parties take considerable space in their briefs setting out various social commentaries and rationalizations, including discussions of juvenile delinquent accountability, of the goals of rehabilitation and a child's free communication with adults, and of the intellectual and emotional development and

maturity level of children. They seek to persuade us of what they believe the Legislature intended in enacting Section 32A–2–14(F), the first sentence of which reads: "Notwithstanding any other provision to the contrary, no confessions, statements or admissions may be introduced against a child under the age of thirteen years on the allegations of the petition." These words of Section 32A–2–14(F) are straightforward and plain. *See State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990) (holding former Children's Code Section 32–1–27(F), which also prohibited use of a juvenile's statement "[n]otwithstanding any other provision to the contrary" to be clear and unambiguous (alteration in original)).

{16} The State contends that subsection (F) should be read to apply only to statements made to persons in positions of authority. The first sentence of Section 32A–2–14(F) has no exceptions or limitations. It does not limit exclusion of statements to those made in custodial settings. Nor does it limit exclusion to those made to persons in authority, as does the second sentence of Section 32A–2–14(F). Nothing in the Children's Code, including the basic rights statute, indicates that, for accountability of delinquent children under thirteen years of age, there are instances in which "statements" should be permitted "on the allegations of [a delinquency] petition." *Id.* In particular, the second sentence, which concerns children thirteen or fourteen years old, includes language specifically referring to "confessions, statements or admissions made . . . to a person in a position of authority." *Id.* No such language is in the first sentence which concerns children under thirteen, indicating that the Legislature did not intend to exclude only statements made to persons in a position of authority. *Id.; see City of Santa Rosa v. Jaramillo*, 85 N.M. 747, 749–50, 517 P.2d 69, 71–72 (1973) (determining that "[t]he Legislature did not see fit to include [certain language] in the statute, therefore it is excluded," and stating that "[w]e are not permitted to read into a statute language which is not there, particularly if it makes sense as written" (internal quotation marks and citation omitted)).

{17} The State nevertheless specifically argues that Section 32A–2–14 should be read *in pari materia* with NMSA 1978, § 32A–2–2 (2003). Section 32A–2–2(A) states an intention to "hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors." The State also argues that the phrase, "[n]otwithstanding any other provision to the contrary" in Section 32A–2–14(F) does not refer to provisions of the Children's Code, but rather means "notwithstanding any other provision of the law of evidence." We are unpersuaded by these arguments. In the absence of any ambiguity in the first sentence of subsection (F) as to whether statements are limited to those made to persons in a position of authority, we also construe the express language "[n]otwithstanding any other provision to the contrary" to eliminate the application of Section 32A–2–2 to show legislative intent to balance accountability with protection of children. Similarly, we construe the language in subsection (F) to eliminate, for example, application of Section 32A–2–14(G), which permits corroborated extrajudicial admissions and confessions.

{18} We can understand the State's position that the exclusion of statements that are made to persons who are not in authority, such as the neighbors and relatives to whom the statements were made in this case, runs counter to the purpose of the law to hold delinquent children accountable while at the same time focusing on rehabilitative care for the child. However, the Legislature presumably weighed these considerations with the protective purposes of the Children's Code, including those underlying the basic rights statute. We have before us a statutory scheme, and a particular statute that plainly forbids admission of the statements of Child, and we see no basis on which we can determine that the Legislature did not mean what it stated.

{19} Furthermore, the State's views (1) that it is "unreasonable for judges to seek to protect children from the judicial system; the law is not the danger[,][t]he object is not to protect children from being adjudged de-

linquent," and (2) that the object is to protect against identifiable abuses such as law enforcement custodial intimidation, are not arguments for judicial ears when the Legislature has addressed the issue clearly and in comprehensive legislation covering the handling of delinquent children. We see nothing in Section 32A–2–14(F) that permits us to search for meanings outside of the direct legislative statement. We see no basis on which to read words into the statute that are not present. We therefore hold that the children's court did not err in suppressing Child's statements.

### III. Child's Fingerprints

{20} We must construe Section 32A–2–14(I). Our review is de novo. *Rowell*, 121 N.M. at 114, 908 P.2d at 1382.

{21} Section 32A–2–14(I) reads: "A child under the age of thirteen alleged or adjudicated to be a delinquent child shall not be fingerprinted or photographed for identification purposes without obtaining a court order." The parties' arguments regarding subsection (I) of the statute fall into two categories. The first is whether a search warrant fits within the meaning of the term "court order" as used in the statute. The second category concerns policy reasons behind the statute.

{22} Despite the parties' efforts, we believe their arguments raise more questions than they answer. For the reasons we set out later in this opinion, we are remanding so the parties may, if necessary, introduce more factual evidence, and may argue the legal questions which we raise in this opinion and which, we believe, must be answered before deciding the meaning and proper application of Section 32A–2–14(I).

### A. Whether a Search Warrant is a Court Order Under Section 32A–2–14(I)

{23} We agree with the State that a search warrant issued by a court is a form of a court order. *See, e.g., Koller v. Arizona Dep't of Transp.,* 195 Ariz. 343, 988 P.2d 128, 133 (Ariz.Ct.App.1999) ("A search warrant is a court order."); *see also State v. Barreras,* 64 N.M. 300, 303, 328 P.2d 74, 76 (1958)

(defining arrest warrant as a "writ or precept issued by a magistrate, justice, or other competent authority, addressed to a sheriff" (internal quotation marks and citation omitted)); *Black's Law Dictionary* 1602 (7th ed.1999) (defining writ as a "court's written order ... commanding the addressee to do or refrain from doing some specified act"). However, this does not answer the narrower question as to whether the Legislature intended Section 32A–2–14(I) to mean and include a search warrant for the fingerprints of a juvenile, under thirteen years old, issued and executed under the circumstances in this case.

{24} The clear purpose of subsection (I) is to afford greater protection for children under thirteen than to older children and adults in regard to fingerprinting. An obvious purpose of the subsection is to require at some stage a judge's independent review of a request for a juvenile's fingerprints, to balance the accountability and protective purposes of the Delinquency Act with the protection to be afforded children under thirteen. *See* §§ 32A–2–2(A), 32A–2–14(I). The children's court's interpretation of subsection (I) did so by rejecting an ex parte process and requiring that the child have an opportunity through a motion process to oppose fingerprinting. Yet, arguably, it might also be reasonable to construe "order" in subsection (I) to include a warrant signed by a district court judge in circumstances in which the judge was specifically alerted to the child's age and to the application of Section 32A–2–14(I), and the warrant mentioned the child's age and expressly authorized fingerprinting of the child pursuant to that section. Unfortunately, we cannot apply Section 32A–2–14(I) simply by determining whether the statute contemplates a search warrant to come within the meaning of "court order." Other language in the statute complicates our interpretation of the statute and its application in this case. Little progress can be made on this issue until the meaning of "alleged ... to be a delinquent child" in subsection (I) is understood.

### B. What is the meaning of "alleged ... to be a delinquent child"?

{25} The State argues that if a search warrant is not considered a court order un-

der the statute, the police and prosecution would be in a catch–22 situation: they must obtain fingerprints in order to support probable cause for a formal charge; yet they cannot obtain the fingerprints before a petition alleging delinquency is filed. The State explains that to interpret Section 32A–2–14(I) as the children's court did would not only prevent the gathering of fingerprints before the filing of charges, a process that often exonerates suspects, but would also encourage, if not require, a delinquency petition to be filed before an investigation is complete, a process that is contrary to the best interests of innocent juveniles. In effect, but not expressly or directly, the State is saying that the statute cannot be construed even to apply in this case, since the statute must be construed to bar the fingerprinting without a court order only after the child is "alleged" in a petition under the Delinquency Act to be a delinquent child.

{26} Even were we to agree with the State that the words "court order" in Section 32A–2–14(I) include the search warrant issued in this case, this determination would beg the unanswered question whether Child, at the time of the issuance of the search warrant, was alleged to be a delinquent child. Nor would a determination by us that "court order" does not mean or include the search warrant be particularly useful. If Child was not alleged to be a delinquent child at the time of the search warrant, it would appear that Section 32A–2–14(I) would be inapplicable. If the provision were inapplicable to Child, an issue neither the parties nor the court addressed, the taking of fingerprints pursuant to the search warrant may have been lawful.

{27} Pursuit of the proper construction of the statute first requires a determination of what "alleged … to be a delinquent child" means. This requires us to further delve into whether these words mean allegations of fact in a law enforcement officer's affidavit for a search or arrest warrant, allegations of fact and delinquency in a complaint, allegations of fact and delinquency in a petition, or perhaps even some other allegations of delinquency, such as, for example, information

given to probation services for the purpose of a preliminary inquiry.

{28} The answer is by no means clear due not only to the Children's Code's use of words but also because from the statutory scheme there appears to be a gray area of investigation of a child as a suspect of a crime which may encompass involvement of the children's court. The Children's Code provides for the filing of a petition alleging delinquency in order to initiate proceedings under the Delinquency Act. NMSA 1978, §§ 32A–1–10, 32A–2–8 (1993). It also contemplates that, before the initiation of a petition alleging delinquency, there can or will be a "complaint[ ] alleging delinquency." NMSA 1978, § 32A–2–7(A) (1993) (providing that a complaint alleging delinquency shall "be referred to probation services, which shall conduct a preliminary inquiry to determine the best interests of the child and of the public with regard to any action to be taken"); § 32A–2–7(B) (providing for a process during the preliminary inquiry that might "obviate the necessity for filing a petition"). Under NMSA 1978, §§ 32A–2–5(A) and (B)(1) (2003), juvenile probation has the power and duty to "receive and examine complaints and allegations that a child is a delinquent child for the purpose of considering beginning a proceeding pursuant to the provisions of the Delinquency Act." "Probation services shall notify the children's court attorney of the receipt of any complaint involving an act that constitutes a felony." § 32A–2–7(E). NMSA 1978, § 32A–1–6(B) (1995), states that "the children's court attorney may represent the state in any matter arising under the Children's Code … when the state is the petitioner or complainant."

{29} In the present case, there is nothing in the record evidencing that any type of a complaint alleging Child's delinquency was filed or made before or at the time the search warrant was issued. However, the record does show that, before the petition against Child was filed, probation services had completed a preliminary inquiry as contemplated under Section 32A–2–7(A).

{30} The Delinquency Act does not define or describe "complaint." The Rules of Criminal Procedure for the District Courts state

that a prosecution may be commenced by the filing of a complaint. Rule 5–201(A) NMRA. Rule 5–201(B) defines a complaint as "a *sworn written statement of the facts,* the common name of the offense," and if applicable, the specific statute allegedly violated.[1] Notably, the affidavit for a warrant for Child's arrest, which was signed almost two months after the search warrant was issued, and one day before Child was arrested, appears to fit the Rule 5–201(B) description of a complaint: a sworn statement alleging that the affiant had reason to believe Child committed murder or manslaughter in violation of NMSA 1978, §§ 30–2–1, –3 (1994), stating the facts underlying the act, and stating that the act constituted a delinquent act.

{31} Another ambiguity needing clarification is whether there exists a procedure available to law enforcement to seek a court order before a complaint or delinquency petition is filed if a child can be "alleged ... to be a delinquent child" before a complaint or a petition. The children's court rules provide specifically for search and arrest warrants. Rule 10–206 NMRA. There exist children's court forms for affidavits for search warrants, and for search warrants. Forms 10–411, –412 NMRA. However, in various sections in the children's court rules, there are also specific provisions for "orders." *See, e.g.,* Rule 10–110 NMRA (authorizing a written order requiring a person to testify notwithstanding the privilege against self-incrimination); Rule 10–301 NMRA (authorizing ex parte custody orders); Rule 10–306.1 NMRA ("Court ordered diagnostic examinations and evaluations"); Rule 10–325 NMRA (authorizing an initial permanency order); Forms 10–452, –453 NMRA (providing example forms of ex parte custody orders).

{32} The Criminal Procedure Act requires criminal prosecutions to be commenced and conducted in accordance with, and all pleadings, practices, and procedures to be governed by, the Rules of Criminal Procedure. NMSA 1978, § 31–1–3 (1972). The Rules of Criminal Procedure also provide specifically for arrest and search warrants. Rules 5–

208, –211 NMRA. There exist criminal forms for such warrants. Forms 9–210, –210A, –214 NMRA. Rule 5–121 NMRA of the Rules of Criminal Procedure specifically covers the preparation and entry of orders. Rule 5–120 NMRA states that "[a]n application to the court for an order shall be by motion."

{33} These, as well as other statutes and rules, show that the delinquency and criminal statutes and procedural rules are meant in part to apply to pre-petition and pre-indictment activities such as the issuance of search and arrest warrants, and detention, as well as to activities after formal charges are filed. They also show that the Legislature and our Supreme Court have addressed "search warrants" and "orders" separately and distinctively. Did the Legislature intend to allow law enforcement officers to seek a court order to obtain fingerprints; and, if so, under what procedure? Or did the Legislature intend that only court-related staff or the children's court attorney could seek a court order?

{34} We believe it is necessary to give the parties the opportunity to introduce additional factual information and to present argument with respect to when a child is "alleged ... to be a delinquent child." This may clarify the issue of what procedures are available to seek a court order, and whether those procedures require an adversarial or allow an ex parte process. In determining what the Legislature meant when it stated "alleged ... to be a delinquent child," the court should look not only to the language of subsection (I), but also to the other subsections in Section 32A–2–14 and to any other statutes for a determination of legislative intent. In particular, and for example, the fact that Section 32A–2–14(C) is worded differently than 32A–2–14(I), in that it forbids interrogation and questioning of a person "alleged or suspected of being a delinquent child" without first advising the person of his or her rights and obtaining a proper waiver, may indicate that in subsection (I), the Legislature meant to distinguish between children suspected of being delinquent and those for-

---

1. The Rules of Criminal Procedure for the District Courts govern the procedure in instances where the child is alleged to be a "serious youth-ful offender" and where a notice of intent is filed alleging the child is a "youthful offender." Rule 10–101(A)(2) NMRA.

mally alleged to be delinquent through a complaint or petition process. Further, the fact that Section 32A–2–14(G) states, in relation to the use of extrajudicial statements, confessions, or admissions to support a finding that the child committed "the delinquent acts alleged in the petition," may or may not assist to clarify the meaning of "alleged" used in subsection (I). Finally, we note that the question of whether the Legislature intended to afford children whose fingerprints are sought the protection of the adversarial process may be further elucidated by the purposes of the Children's Code enumerated by the Legislature. One purpose is "to provide judicial and other procedures through which the provisions of the Children's Code are executed and enforced and in which the parties are assured a fair hearing and their constitutional rights and other legal rights are recognized and enforced." NMSA 1978, § 32A–1–3(B) (1999). The children's court should consider whether these, and any other relevant statutes, clarify the meaning of "alleged . . . to be a delinquent child" in subsection (I).

{35} To summarize, among the questions the court should address on remand is whether Section 32A–2–14(I) applies in this case. This requires (1) determining the meaning of "alleged to be a delinquent child," which will entail (a) looking at the Legislature's intent in conjunction with (b) whether procedures exist during the criminal or delinquency investigatory stage which may "allege" delinquency; and (2) determining in this case whether Child was alleged to be a delinquent child at the time the fingerprints were taken.

{36} Further, if Child was not alleged to be a delinquent child at the time of the search warrant then the court should determine whether (1) the Legislature nevertheless intended by this statute to protect children not alleged to be delinquent, in other words, whether the statute nonetheless applies, and (2) if not, whether the fingerprints taken may lawfully be admitted into evidence.

{37} In addition, if the court determines that Child was alleged to be delinquent or if the statute applies even though Child was not alleged to be delinquent, the court must then determine whether the search warrant was the type of court order intended by the Legislature, which will require determining (1) whether the Legislature intended Child to be afforded the opportunity to oppose issuance of the search warrant, (2) if not, whether the search warrant sufficiently alerted the court to balance Child's rights under the Children's Code against the State's reasons for requesting the fingerprints, and (3) if an adversarial process was required, whether there is available any adversarial process before a petition alleging delinquency is filed and what that process is. The children's court should enter findings of fact and conclusions of law on all of the issues it addresses.

## C. New Fingerprints

{38} The State questions the children's court's order suppressing the fingerprints when the court could have independently considered upon motion whether fingerprinting should be permitted and then either permit new fingerprinting or, so as not to require a useless act, permit the use of the already existing prints. Although no such motion was on file, the court determined, without explanation, that it was too late in the proceeding for the State to request and obtain new fingerprints.

{39} While we often would defer to the children's court in regard to such rulings, in this case we would prefer the issue be considered along with the other issues we raise in this opinion. Further, in determining that the State should be precluded from seeking new fingerprints, the children's court should explain the reasons for the determination, including at the very least how granting a motion would be prejudicial to Child or otherwise upset a proper balance in regard to the rights and interests of Child and the public. Again, more factual development may assist in answering this question.

## CONCLUSION

{40} We affirm the children's court's suppression of Child's statements pursuant to Section 32A–2–14(F). In regard to the children's court's suppression of Child's finger-

prints pursuant to Section 32A–2–14(I) and refusal to permit the State to seek an order allowing new fingerprinting, we remand for the court to hold a further evidentiary or other hearing, as necessary, to fully consider the issues as discussed in and in accordance with this opinion in regard to the application of Section 32A–2–14(I) and to enter findings of fact and conclusions of law as to all addressed issues.

{41} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.