775 P.2d 1140

The STATE of Arizona, Appellee,

v.

Timothy JUAREZ, Jr., Appellant.

Mark Neal SCHOEFFLER, Petitioner,

v.

SUPERIOR COURT In and For MARICOPA COUNTY, and the Honorable Michael O. Wilkinson, a judge thereof; Municipal Court of the City of Phoenix, and the Honorable Ralph G. Smith, Jr., and the Honorable John J. Murphy, Judges thereof,

and

The STATE of Arizona, Real Party in Interest, Respondents.

William M. ELSBURY, Petitioner,

v.

Patrick O'NEIL, Judge Pro Tem of the Superior Court, County of Maricopa, State of Arizona; Roderick G. McDougall, as City Attorney of the City of Phoenix, Arizona; M. Louis Levin, as Presiding Judge of the Phoenix Municipal Court, Phoenix, Arizona; and N. Pike Johnson, as Judge of the Phoenix Municipal Court, Phoenix, Arizona, Respondents.

Nos. CR–88–0372–PR, CV–88–0491–SA and CV–88–0510–SA.

Supreme Court of Arizona,
In Banc.

April 6, 1989.

Reconsideration Denied June 13, 1989.

Robert K. Corbin, Atty. Gen., Phoenix, by Eric J. Olsson, Asst. Atty. Gen., Tucson, for appellee State.

Robert Arentz, Cochise County Public Defender by Joseph P. DiRoberto, Deputy Public Defender, Bisbee, for appellant Timothy Juarez, Jr.

Roderick G. McDougall, Phoenix City Atty. by Samuel K. Lesley and Richard J. Graci, Asst. City Prosecutors, Phoenix, for respondent/real party in interest.

Earl Terman, Phoenix, for petitioner Mark Schoeffler.

Patrick E. Eldridge, Phoenix, for petitioner William Elsbury.

CAMERON, Justice.

## I. JURISDICTION

Timothy Juarez, Jr., petitions this court to review the court of appeals' decision affirming his convictions by a jury of driving under the influence of intoxicating liquor (DUI) (A.R.S. § 28–692(A)) and driving with a blood alcohol content (BAC) of 0.10 percent or more (A.R.S. § 28–692(B)). William M. Elsbury petitioned this court for writ of special action to review his convictions for DUI (A.R.S. § 28–692(A)) and driving with a BAC of 0.10 percent or more (A.R.S. § 28–692(B)). Mark Neil Schoeffler petitioned this court for special action to review his conviction for DUI (A.R.S. § 28–692(A)). We granted Juarez's petition for review, accepted jurisdiction of Elsbury's and Schoeffler's petitions for special action and consolidated the three cases for disposition. We have jurisdiction in *Juarez* pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24 and Ariz.R. Crim.P. 31.19, 17 A.R.S. and in *Elsbury* and *Schoeffler* pursuant to Ariz. Const. art. 6, § 5(1).

## II. QUESTION PRESENTED

We consider only one question: Was it error to inform the driver that following his arrest for DUI he would not be permitted to contact his attorney before deciding whether to submit to a breath test?

## III. FACTS

The facts necessary for a determination of this matter on appeal are as follows:

### A. *Timothy Juarez*

On 14 July 1987 just before 7:00 p.m., DPS Officer Matthew Janton arrested Timothy Juarez in Cochise County near the Arizona–New Mexico border. After making arrangements for the removal of Juarez's truck from the road, the two left for Willcox, where the nearest police station with an intoxilyzer machine was located. They arrived about 8:40 p.m., and Janton began the mandatory (A.R.S. § 28–692.03) twenty-minute observation period before administering the intoxilyzer test.

In requesting Juarez's consent to submit to the intoxilyzer test, Officer Janton read to the defendant the following:

Arizona law requires you to submit to a breath test to determine the alcoholic content of your blood. If you refuse to submit to this test, your license or permit to drive will be suspended for twelve months. You are therefore requested to submit to a breath test.

Unless you expressly agree to take the test, I will consider you are refusing. *You will not be allowed to call an attorney before deciding if you will take this test.* However, after you take the test, you may then telephone an attorney or friend if you choose.

If you decide not to take the test, you will still be allowed to telephone an attorney, but your refusal will still result in suspension of your license or permit to drive for twelve months.

(Emphasis added.) The intoxilyzer test was administered at 9:05 p.m., more than two hours after the arrest, and it showed a BAC of 0.179 percent.

Juarez was charged by indictment with DUI (A.R.S. § 28–692(A)) and driving with a BAC of 0.10 percent or more. (A.R.S. § 28–692(B)). At trial, the parties stipulated that Juarez was driving with a revoked license. A jury found him guilty as charged and the court sentenced him to concurrent, maximum prison terms of four years. The court found Juarez's eight prior DUI convictions and the fact that he consciously posed a risk to others by deciding to drive while intoxicated and without a license to be aggravating circumstances. Additionally, the court noted that pursuant to one of Juarez's prior convictions, he had been sentenced to two years in prison.

In a per curiam opinion, 775 P.2d 1137, the court of appeals affirmed and Juarez petitioned this court for review which we granted.

### B. *William M. Elsbury*

On 7 March 1987, at about 11:15 p.m., Phoenix Police Officer William Niles responded to a traffic accident in which Elsbury was involved. Elsbury was arrested and taken to the police station, where at 12:02 a.m. the officer began the twenty-minute observation period before the breath test. During the observation period, the officer read Elsbury his *Miranda* rights, and Elsbury said he did not want to answer questions without an attorney being present. Toward the end of the twenty-minute observation period, Elsbury was also advised of the Implied Consent Law,

A.R.S. § 28–691, and was told that he had no right to contact an attorney during the test but could do so after the test. The breath test was administered at 12:23 a.m., resulting in a reading of 0.21. The officer advised Elsbury of his right to a second sample test and permitted Elsbury to make a phone call. Rather than calling an attorney, Elsbury called a friend for a ride home. At 12:35 a.m., after his phone call, he took a second breath test.

Elsbury was charged with violating A.R.S. § 28–692(A), DUI, and (B), driving with a BAC of 0.10 percent or more. Elsbury subsequently contacted an attorney, who had the second breath sample analyzed. The test results showed a BAC of 0.26 percent.

The court granted Elsbury's pretrial motion to suppress the first breath test apparently and correctly (we believe) because it found a violation of *Kunzler v. Pima County Superior Court,* 154 Ariz. 568, 744 P.2d 669 (1987). The state moved to use the results of the second test in its case-in-chief. The defense disclosed the result to the prosecution pursuant to Ariz.R.Crim.P. 15. The court granted this motion, finding that Elsbury had the opportunity to call an attorney before taking the second sample. Elsbury was found guilty as charged. He admitted a prior DUI conviction and was sentenced to sixty days in jail and fined $715. He appealed to the superior court, which affirmed. We granted Elsbury's petition for special action.

### C. *Mark Neal Schoeffler*

On 13 September 1987, at approximately 7:00 p.m., Officer Miner saw Schoeffler at 3525 E. Emile Zola, and determined that Schoeffler had been drinking. Because he had information that Schoeffler had been driving, Officer Miner warned Schoeffler not to drive in his condition.

At 11:40 p.m., while monitoring the intersection of 36th Street and Sweetwater, Officer Curatola observed Schoeffler's vehicle approaching Sweetwater at a high rate of speed and crossing the intersection without slowing or stopping at the stop sign. The officer paced Schoeffler, by calibrated

speedometer, at 60 m.p.h. Officer Miner stopped him at 37th Place, south of Thunderbird Road.

Schoeffler stumbled out of his vehicle. Officer Curatola observed his watery, bloodshot eyes and smelled a strong odor of alcohol. During the field sobriety tests, Schoeffler swayed and could not recite the alphabet. Schoeffler was arrested for DUI and transported to the Union Hills police station.

After Officer Curatola transported Schoeffler to the police station, he advised him of his *Miranda* rights and Schoeffler refused to answer questions. After he completed the twenty-minute observation, Officer Curatola read Schoeffler a statement from the Implied Consent Law which advised Schoeffler that:

> "You will not be allowed to call an attorney before deciding if you will take this test."

Schoeffler said that he would submit to the test. The machine was started, at which point Schoeffler said he did not understand what had been read to him. The officer read Schoeffler the implied consent warning four times at his request. Schoeffler finally said he would not take the test. Officer Curatola testified at trial that Schoeffler did not ask to call an attorney, but that even if he had requested a call after being read the implied consent warning, it would have interrupted the ongoing DUI investigation. After his refusal, Schoeffler requested and was allowed to make a phone call. The call was to a non-lawyer. Schoeffler was subsequently charged and tried for DUI in violation of A.R.S. § 28–692(A). At trial, the state introduced Schoeffler's refusal to take the test. A.R.S. § 28–692(K).

At a hearing on Schoeffler's motion to dismiss or to suppress any evidence of Schoeffler's refusal to take a breath test, defense counsel cross-examined Officer Curatola as follows:

> Q: Alright. Let's assume that he was willing to go along with you and answer the questions that are on page one of the alcohol influence report which is part of Exhibit One—.

> A: Yes.

> Q: Would it—if he answered those would you have been in that observation period that you ordinarily spend that 20 minute period?

> A: Yes, sir.

> Q: Again I ask you Officer, is there any policy of the police department which prevents you from reading the four statements to him immediately upon arriving at the room where you do the observation?

> A: There is no policy on when they're read. No, sir.

> \* \* \* \* \* \*

> Q: Is there a phone in that room?

> A: Yes.

> Q: Is there—could you be observing the defendant while he would be on a telephone should he use a telephone?

> A: Yes.

> Q: So there's nothing essentially that would impede your observation should he be speaking while you were sitting there watching him. Is that correct?

> A: That's correct.

> Q: Now if the defendant wanted to speak in private with someone during that 20 minute period, would you have allowed him to do that?

> A: That would have disrupted my observation period.

The trial judge in ruling stated:

There's no indication that the defendant was actually misled by any of this and even if he had requested to call an attorney during the observation period that would certainly have disrupted the ongoing investigation.

Defendant was convicted as charged and the superior court affirmed on appeal. We accepted jurisdiction of Schoeffler's petition for special action.

## IV. DISCUSSION

We thought that this matter had been previously decided by this court.

We start with the premise that a person is always entitled to the assistance of an attorney whether in custody or not.

Of course, if he is not in custody, he may exercise that right when and where he wishes. If he is in custody, he may still exercise his right to an attorney and the state may not unreasonably restrict that right. Indeed, Rule 6.1(a) of the Rules of Criminal Procedure, 17 A.R.S., recognizes the federal and state constitutional right to counsel:

**Rule 6.1 Rights to counsel; waiver of rights to counsel**

**a. Right to be Represented by Counsel.** A defendant shall be entitled to be represented by counsel in any criminal proceeding, except in those petty offenses such as traffic violations where there is no prospect of imprisonment or confinement after a judgment of guilty. The right to be represented shall include the right to consult in private with an attorney, or his agent, as soon as feasible after a defendant is taken into custody, at reasonable times thereafter, and sufficiently in advance of a proceeding to allow adequate preparation therefor.

It is only when the exercise of that right will hinder an ongoing investigation that the right to an attorney must give way in time and place to the investigation by the police. *McNutt* [*v. Superior Court,* 133 Ariz. 7, 648 P.2d 122 (1982)]; [*State v.*] *Holland,* 147 Ariz. 453, 711 P.2d 592 (1985). This arises most frequently in DWI cases because of the "unique evidentiary circumstances attendant to DWI arrests", *Montano v. Superior Court,* 149 Ariz. 385, 389, 719 P.2d 271, 275 (1986).

*Kunzler v. Pima County Superior Court,* 154 Ariz. 568, 569, 744 P.2d 669, 670 (1987).

Admittedly, we previously indicated in a license-suspension case that a defendant is not entitled to an attorney before taking a breathalyzer test. *Campbell v. Superior Court,* 106 Ariz 542, 549–50, 479 P.2d 685, 692–93 (1971). In *Campbell,* the defendant refused to take a breathalyzer test. He was not, however, given the erroneous warning which was given in this case, and he made no demand to confer with an attorney. After his license was suspended, defendant brought a petition for special ac-

tion claiming, among other things, that a person has a right to the assistance of counsel in deciding whether or not to submit to a chemical breath test. We held that a license suspension hearing was civil in nature and stated:

It is the opinion of this court that respondent was not entitled to the assistance of counsel in deciding whether or not to submit to the breathalyzer test. *See State v. Petkus,* [110 N.H. 394,] 269 A.2d 123 (S.Ct.N.H.1970); *State v. Kenderski,* 99 N.J.Super. 224, 239 A.2d 249 (1968).

*Campbell v. Superior Court,* 106 Ariz 542, 550, 479 P.2d 685, 693 (1971).

We do not believe, however, that *Campbell* applies to this case which is a criminal matter. We believe that we made it clear in *Kunzler* that, in a criminal DUI case, the accused has the right to consult with an attorney, if doing so does not disrupt the investigation. *Kunzler,* 154 Ariz. at 569, 744 P.2d at 670.

We agree with the New York Court of Appeals which said:

[L]aw enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand.

*People v. Gursey,* 22 N.Y.2d 224, 227, 239 N.E.2d 351, 352, 292 N.Y.S.2d 416, 418 (1968).

Support for the holding in *Kunzler* can be found in an earlier case denying the driver access to a telephone to call his attorney to arrange an independent blood test. *McNutt v. Superior Court,* 133 Ariz. 7, 648 P.2d 122 (1982). In *McNutt,* we stated:

We agree with the superior court that the case should be dismissed. A.R.S. § 28–692(F) and constitutional standards of due process give a DWI suspect the right to obtain an independent blood test. *See Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390 (App.1977). In the instant case, petitioner indicated a desire to take such a test but could not personally arrange

for it near in time to when the state took its test because he was in custody. The state denied him the chance to have his attorney arrange for the test. This action by the state clearly violated petitioner's "right to consult in private with an attorney * * * as soon as feasible after a defendant is taken into custody" guaranteed by Ariz.R.Crim.P. 6.1(a).... In the instant case, the state offered no justification for denying petitioner's request to call his attorney, the attorney was available by telephone, and petitioner's call would not have unduly delayed the DWI investigation and arrest. The state's action resulted in petitioner not being able to attempt to gather evidence exculpating him on the issue of intoxication.

*Id.*, 133 Ariz. at 9–10, 648 P.2d at 124–25.

■ By statute, an operator is required to observe the suspect for twenty minutes before testing. A.R.S. § 28–692.03(A)(3). We note in the cases that have come before us the practice of waiting until the end of the twenty-minute observation period before the operator informs the accused of his rights and responsibilities under the Implied Consent Law. Unless there are compelling reasons requiring the operator to wait twenty minutes before informing the driver of his rights and duties under the Implied Consent Law, the defendant should be so notified at the beginning of the twenty-minute period.

■ We cannot imagine many cases where this would be a disruption of the procedures followed by the police in preparing to administer a breath test to a driver. Informing the driver that he may not call his attorney before taking the test misstates the law and violates the driver's right to counsel under the sixth amendment of the United States Constitution and article 2, section 24 of the Arizona Constitution. Because this is a basic constitutional right, the burden is upon the state to show that a phone call would in fact be disruptive of an ongoing investigation. Evidence obtained in violation of this procedure should be suppressed.

## V. DISPOSITION

### A. *Timothy Juarez*

Timothy Juarez was read an incorrect statement of the law concerning the taking of the breath test. The breath test taken as a result of that erroneous warning should have been suppressed and it was error for the trial court to admit the results in evidence.

As to Timothy Juarez, the court of appeals' opinion is vacated and the superior court's decision is reversed. The matter is remanded to the trial court for a new trial without evidence of the breath test results.

### B. *William M. Elsbury*

As to William Elsbury, the first BAC was taken after the reading of the erroneous warning. The trial court correctly suppressed the results of the first breath test. *Kunzler, supra.*

■ However, Elsbury took a second test after he was allowed to call an attorney. Admittedly, he called a friend instead of an attorney, but at that time Elsbury's right to call an attorney was respected.

The results of the second test were made available to the state pursuant to Ariz.R. Crim.P. 15.2. The results were admissible because they were taken after Elsbury had been told of his right to call his attorney. There was, therefore, sufficient evidence to support a conviction.

As to William M. Elsbury, the convictions are affirmed.

### C. *Mark Neal Schoeffler*

Mark Neal Schoeffler was incorrectly informed that he would not be allowed to call his attorney before taking the breath test, allegedly because a call would have disrupted the ongoing investigation. We disagree. The officer's statements that it would have been disruptive to allow defendant to make a phone call during the twenty-minute observation period is inconsistent with his statement that it would not have been disruptive for the defendant to answer the officer's questions during that same period.

We do not believe there was sufficient evidence to show that the phone call would have disrupted an ongoing investigation during the twenty-minute observation period. The state did not carry its burden in that regard. Evidence of defendant's refusal should not have been admitted and the trial court incorrectly denied the motion to dismiss or to suppress.

As to Mark Neal Schoeffler, the matter is reversed and remanded for a new trial.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.