172 P.3d 848

**STATE of Arizona, Appellee,**

v.

**Jennifer S. STANLEY, Appellant.**

**No. 1 CA–CR 06–0649.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 18, 2007.

254

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Stephen Whelihan, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶ 1 We address in this Opinion several issues of first impression with regard to what is frequently referred to as the implied consent statute, applicable to those operating motor vehicles in Arizona and arrested for driving under the influence. Ariz.Rev.Stat. ("A.R.S.") § 28–1321 (Supp.2006). Specifically, we consider whether requesting to consult with an attorney constitutes a refusal to take a blood test under the implied consent statute. We also consider whether a search warrant for a blood test may be issued even if the suspect has not refused to take the test. We determine that consulting with an attorney, without hindering the investigation, is not a refusal under the statute. We further determine that the issuance of a search warrant under the statute is not dependent upon a refusal.

### I.

¶ 2 Jennifer S. Stanley appeals from her convictions for two counts of aggravated driving while under the influence of intoxicating liquor, a class four felony. The only

issue is whether the trial court erred in denying the defendant's motion to suppress the results of a blood test carried out pursuant to a warrant. Stanley alleges the court erred because she did not refuse, nor did the affidavit supporting the warrant allege she refused, to take the test offered under the implied consent law prior to the issuance of the warrant. Rather, she was exercising her right to consult with an attorney when the affidavit in support of the warrant was submitted.

¶ 3 Because of the narrow nature of the issues, we cite only those facts necessary to the issues before us. They are essentially undisputed. For our purposes, they can be summarized as follows.

¶ 4 There was probable cause for Officer D.K. to arrest Stanley for DUI on November 10, 2004, and he did so on that date at about 8:50 p.m. The officer gave Stanley the *Miranda* warnings at 9:25 p.m. At 9:35 p.m., the officer read Stanley the implied consent admonitions required by statute and requested a blood test. Stanley stated that she did not understand, and the officer explained the admonitions again. Stanley then asked for an attorney. Stanley called an attorney at 9:50 p.m. The attorney called back at 9:59 p.m. and Stanley was permitted to speak with her attorney.

¶ 5 At 10:05 p.m., while Stanley was speaking with her attorney, Officer D.K. submitted to the Superior Court an "Affidavit in Support of Fax Telephonic Search." The affidavit did not state that Stanley had refused to submit to a blood test. At 10:20 p.m., Stanley concluded her telephonic conference with her counsel. At 10:25 p.m., Officer D.K. again requested a blood test from Stanley. Stanley refused.[1] It is unclear at what time the search warrant was obtained by the police. The warrant bears an issuance time, 10:05 p.m., which is the same time as that on the affidavit. At approximately 11:00 p.m., Officer D.K. served the warrant and a phlebotomist drew two blood samples.

¶ 6 Stanley moved to suppress the blood test on grounds that the affidavit did not

allege she refused the test and because rather than refuse the test, she only had exercised her constitutional right to consult with counsel. Stanley argued, "when a person asks for an attorney, that does not indicate to the officer that they're refusing or agreeing [to a test]. It simply is they're asking for legal advice. If that in fact triggered a refusal, it would obviate the right of a defendant to contact an attorney." The court denied Stanley's motion to suppress. The trial court found that "what transpired at 9:35 p.m., when the defendant did not expressly agree to submit to the test and instead requested an attorney, amounts to a failure to expressly agree to the test." The trial court determined that the officer was therefore authorized to obtain a warrant after that time and that the affidavit need not have referred to any such refusal.

¶ 7 In her motion for reconsideration, Stanley again argued that the trial court's determination that her request to speak to an attorney was a refusal to submit to a blood test was a violation of her right to consult an attorney. After oral argument, the court denied the motion. Specifically, the court found that Stanley's "failure to expressly agree to submit to the test over the period of time that had passed amounted to a refusal," and that was sufficient under the statute.

¶ 8 After her conviction, the court denied her subsequent motion for acquittal and new trial. The court granted Stanley probation for three years to commence after serving four months' imprisonment. Stanley timely appealed. This court has jurisdiction pursuant to A.R.S. §§ 12–2101(B) (2003), 12–120.21(A)(1) (2003), and 13–4033(A)(1) (2001).

**II.**

¶ 9 The primary issue on appeal is whether the implied consent statute, A.R.S. § 28–1321, mandates that a search warrant for a blood test must be based on an affidavit setting forth that the defendant has refused to give consent to the test. A corollary issue

---

1. In response to the request, Stanley "laughed" and said, "Do a lot of people call attorneys?" Both the State and Stanley characterize this as a

refusal and the trial court accepted it as an express refusal.

is whether the request to speak with an attorney, standing alone, acts as a "refusal" under the implied consent law.

¶ 10 We review issues of statutory interpretation de novo. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). "In interpreting a statute, we first look to the language of the statute itself. Our chief goal is to ascertain and give effect to the legislative intent." *Scottsdale Healthcare, Inc. v. Ariz. Health Care Cost Containment Sys. Admin.*, 206 Ariz. 1, 5, ¶ 10, 75 P.3d 91, 95 (2003) (internal citation omitted). If the language is not clear, "we determine legislative intent by reading the statute as a whole, giving meaningful operation to all of its provisions, and by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Zamora*, 185 Ariz. at 275, 915 P.2d at 1230.

### A.

¶ 11 We first address the issue of whether the request for counsel here constituted a "refusal" under the implied consent statute. The implied consent statute generally provides that "[a] person who operates a motor vehicle in this state gives consent ... to a test or tests of the person's blood, breath, urine or other bodily substance" if arrested for an alcohol related offense while driving. A.R.S. § 28–1321(A). The statute specifically requires that "[a]fter an arrest a violator shall be requested to submit to and successfully complete any test or tests prescribed by subsection A of this section." *Id.* at (B). Further, "if the violator refuses the violator shall be informed that the violator's license or permit to drive will be suspended or denied ... unless the violator expressly agrees to submit to and successfully completes the test or tests." Id. The statute provides that "[a] *failure to expressly agree* to the test or successfully complete the test is *deemed a refusal.*" *Id.* (emphasis added).

¶ 12 Defendant argues that the request to speak to an attorney, standing alone, does not constitute a "failure to expressly agree" that can be deemed a refusal. We agree. Arizona Rule of Criminal Procedure 6.1(a) grants defendants the "right to consult in private with an attorney ... as soon as feasible after a defendant is taken into custody." The Arizona Supreme Court has made it clear that "in a criminal DUI case, the accused has the right to consult with an attorney, if doing so does not disrupt the investigation." *State v. Juarez*, 161 Ariz. 76, 80, 775 P.2d 1140, 1144 (1989); *Kunzler v. Superior Court*, 154 Ariz. 568, 569, 744 P.2d 669, 670 (1987) ("It is only when the exercise of that right [to counsel under Rule 6.1] will hinder an ongoing investigation that the right to an attorney must give way in time and place to the investigation by the police."). The Arizona Supreme Court has also determined that this right under Rule 6.1 is constitutionally protected in this setting:

> We cannot imagine many cases where this would be a disruption of the procedures followed by the police in preparing to administer a breath test to a driver. Informing the driver that he may not call his attorney before taking the test misstates the law and violates the driver's right to counsel under the sixth amendment of the United States Constitution and article 2, section 24 of the Arizona Constitution.

*Juarez*, 161 Ariz. at 81, 775 P.2d at 1145. Where possible, we construe a statute to be constitutional. *State v. Moerman*, 182 Ariz. 255, 257–58 n. 1, 895 P.2d 1018, 1020–21 n. 1 (App.1994) ("A statute is presumed to be constitutional....").

¶ 13 In light of this authority, we do not consider that the request for counsel, standing alone, constitutes a "refusal." It is only when there is something more, such as an interference with the investigation brought on by delay in being able to obtain counsel or conclude conversations with counsel, that such a request may rise to the level of a refusal. Those facts were not presented at the evidentiary hearing in this case. Thus, on the facts before us, we find no evidence of a "refusal" which could have been set forth at the time the affidavit was submitted.

### B.

¶ 14 We turn now to the issue of whether the affidavit upon which the search warrant

for a blood test was based was defective by failing to avow there had been a refusal. We must consider what requirements, if any, the implied consent statute adds to those already in place for obtaining a search warrant to collect a DUI suspect's blood.

¶ 15 Returning again to the statute, § 28–1321(D) provides:

> D. *If a person under arrest refuses* to submit to the test designated by the law enforcement agency as provided in subsection A of this section:
>
> 1. *The test shall not be given, except* as provided in § 28–1388, subsection E or *pursuant to a search warrant.*

(Emphasis added.) The reference to A.R.S. § 28–1388(E) (2004) pertains to blood drawn for other purposes when, for instance, an individual is receiving medical care. In that circumstance, without either consent or a search warrant, a sample of blood may be tested for alcohol concentration. Though it is inapplicable here, it helps us to understand the context of the reference to search warrants.

¶ 16 Prior to 1990, the implied consent statute did not permit obtaining blood pursuant to a search warrant. The prior version of the statute provided that

> If a person under arrest refuses to submit to the test designated by the law enforcement agency as provided in subsection A of this section *none shall be given* except as provided in § 28–[1388(E) ].

A.R.S. § 28–691(D) (1989) (emphasis added). In 1990, this prohibition, "none shall be given," was deleted from our current statute. 1990 Ariz. Sess. Laws, ch. 375, § 7 (amending A.R.S. § 28–691, which has since been renumbered as A.R.S. § 28–1321). The legislature also amended subsection (D)(1) in 1990 by adding the phrase "or pursuant to a search warrant." *Id.*

¶ 17 As we have pointed out previously, the legislature's amendments were "obviously ... a response" to *Collins v. Superior Court,* 158 Ariz. 145, 761 P.2d 1049 (1988), and other cases, which made the legislature aware of circumstances in which the statutory prohibition against tests—"none shall be given"—precluded the use of a search warrant to

obtain blood even in the event of a refusal. *State v. Clary,* 196 Ariz. 610, 612, ¶ 12, 2 P.3d 1255, 1257 (App.2000); *see Collins,* 158 Ariz. at 146, 761 P.2d at 1050 (construing § 28–691(D) so that "blood taken solely as a result of a search warrant after the defendant has refused to submit to the taking of a blood sample is inadmissible."); *see also State v. Cocio,* 147 Ariz. 277, 284, 709 P.2d 1336, 1345 (1985) (narrowly limiting the scope of then § 28–692(m)); *State v. Brita,* 158 Ariz. 121, 123, 761 P.2d 1025, 1027 (1988) (same).

¶ 18 We understand that some of our descriptions of the implied consent statute after the 1990 amendments refer to the right to a search warrant coming into play *after* there has been a refusal. For instance, in *Clary* we addressed the issue of whether a search warrant authorizing a blood test issued in compliance with the implied consent law could be executed despite a suspect's "active resistance." 196 Ariz. at 611, 2 P.3d at 1256. In approving such a warrant, we stated that

> *when a DUI suspect refuses* to take the chosen test, section 28–1321(D) ... effectively gives police an option. They may either obtain with probable cause a sample of blood drawn for another reason, as for example, blood drawn for a suspect's medical treatment, or they may draw a suspect's blood pursuant to a search warrant.

196 Ariz. at 612, ¶ 12, 2 P.3d at 1257 (emphasis added). Additionally, in *Koller v. Arizona Department of Transportation, Motor Vehicle Division,* 195 Ariz. 343, 348, ¶ 24, 988 P.2d 128, 133 (App.1999), we addressed the circumstances under which a violator could recant her refusal for purposes of an administrative hearing to suspend her license. We stated that "[t]he statutory provision allowing the nonconsensual taking of blood upon a judicial officer's finding of probable cause *is triggered by* a DUI suspect's refusal to agree to the chemical test selected by an officer." *Id.* (emphasis added).

¶ 19 The description of the warrant requirement being "triggered by" a refusal or being available "when a DUI suspect refuses" reflects what typically occurs: if there is no refusal to the proposed test, there would typically be no reason for an officer to request a warrant. The specific legal issue

in this case, however—and one which was not addressed in either *Clary* or *Koller*—is whether § 28–1321(D) *requires* a refusal to a test before a warrant may issue.

¶ 20 Section 28–1321(D)(1) specifies what occurs "[*i*]*f* a person under arrest refuses to submit to the test." Here, as set forth above, we do not consider that the request to speak to an attorney is a refusal. Thus, by its terms, § 28–1321(D) does not apply as there has been no refusal. Does this mean that police may not nevertheless obtain a search warrant? We think not.

¶ 21 Unlike the prior version of § 28–1321(D), there is no language pertaining to tests in the present statute that "none shall be given." A.R.S. § 28–691(D) (1989). The prohibition against the use of search warrants was specifically dropped. Thus, there is no statutory language to bar obtaining a search warrant, as there was prior to 1990 as determined in *Collins.* 158 Ariz. at 146, 761 P.2d at 1050.

¶ 22 Search warrants may be authorized "[w]hen property or things to be seized . . . constitute any evidence which tends to show that a particular public offense haś been committed, or tends to show that a particular person has committed the public offense." A.R.S. § 13–3912(4) (2001). The blood identified by the affidavit clearly meets that standard. Additionally, the statute requires that "[n]o search warrant shall be issued except on probable cause, supported by affidavit, naming or describing the person and particularly describing the property to be seized and the place to be searched." A.R.S. § 13–3913 (2001). The affidavit here likewise meets that requirement. A refusal to take a test, though required to administratively revoke one's driver's license pursuant to A.R.S. § 28–1321, is not a requirement to the issuance of a search warrant in support of aggravated DUI.

¶ 23 We acknowledge that it may well be the unusual case when a warrant is necessary after a suspect has "failed to refuse." In most circumstances, the "failure to refuse" will mean there has been consent to the test and a warrant is not necessary. However, when, as here, there is no refusal yet still no consent to the test, there is nothing in § 28–1321 that precludes the issuance of a search warrant. Of course, police agencies are not at liberty to ignore the mandatory statutory requirement that they *request* an arrested suspect to give consent except as excused by statute. A.R.S. § 28–1321(B) ("[a]fter an arrest a violator *shall be requested* to submit to and successfully complete any test"); *see id.* at (C) (consent "deemed not . . . withdrawn" for "a person who is dead, unconscious or otherwise in a condition rendering the person incapable of refusal").

¶ 24 Our holding takes into account "the unique evidentiary circumstances attendant to [DUI] arrests." *Kunzler,* 154 Ariz. at 569, 744 P.2d at 670 (quoting *Montano v. Superior Court,* 149 Ariz. 385, 389, 719 P.2d 271, 275 (1986)). To avoid additional evidentiary hurdles, the police typically need to have the blood sample drawn within two hours of the arrest. *See* A.R.S. § 28–1381(A)(2) (Supp.2006) ("It is unlawful for a person to drive . . . [i]f the person has an alcohol concentration of 0.08 or more within two hours of driving. . . ."). If the sample is drawn after the two-hour mark, an expert must use retroactive extrapolation to determine the blood alcohol content. *State v. Claybrook,* 193 Ariz. 588, 590, ¶ 14, 975 P.2d 1101, 1103 (App.1998). The right to speak to an attorney prior to deciding whether to submit to a test, however, is a guaranteed constitutional right and takes time. *Juarez,* 161 Ariz. at 81, 775 P.2d at 1145; *Kunzler,* 154 Ariz. at 570, 744 P.2d at 671. Our construction of the statute permits the police to obtain a search warrant at any time after a suspect has been *requested* to submit to a test and has failed to unequivocally consent. This includes time while a suspect exercises the right to consult an attorney. We consider this result preferable to creating arbitrary rules specifying the amount of time a suspect can speak to an attorney before the conduct will be deemed a refusal under A.R.S. § 28–1321(B) or engaging in factual disputes about what constitutes hindering an investigation under the *Juarez* line of cases. *See Juarez,* 161 Ariz. at 81, 775 P.2d at 1145.

¶ 25 Because we hold that the suspect's refusal to submit to a test is not a

statutory prerequisite to obtaining a search warrant under A.R.S. § 28–1321(D)(1), the affidavit supporting the search warrant does not need to document the suspect's refusal. Accordingly, the search warrant is valid.

### III.

¶ 26 Our decision requires us to address briefly how our holding relates to the effect of the issuance of a warrant on proceedings for the administrative suspension of a license under § 28–1321 (which is not before us) as contrasted with the prosecution of a criminal offense for aggravated DUI (which is before us). *Koller* was an administrative proceeding on a license suspension. 195 Ariz. at 344, ¶ 1, 988 P.2d at 129. In *Koller,* the suspect refused to take a breath test several times. *Id.* at ¶ 3. The arresting officer then obtained a search warrant for a blood test. *Id.* at ¶ 4. At the administrative hearing to revoke her license, the suspect claimed that she had recanted her refusal by offering to take a breath test to another officer, but she could not establish that the alleged recantation was prior to the issuance of the warrant. *Id.* at 347, ¶ 19, 988 P.2d at 132. She also recanted her refusal when the arresting officer came back to her holding cell to serve the search warrant. *Id.* at ¶ 18.

¶ 27 We held that "a driver cannot prevent a license revocation by recanting his refusal to agree to a chemical test *after* a search warrant for a blood sample is issued." *Id.* at 346, ¶ 15, 988 P.2d at 131 (emphasis added). Our holding today, permitting issuance of a warrant without a refusal, is consistent with this holding and does not alter *Koller:* a violator "cannot prevent" a license revocation if the violator has refused prior to the issuance of a warrant. The mere fact of the issuance of a warrant, however, does not establish refusal for purposes of an administrative license suspension proceeding under § 28–1321. Refusal must be addressed factually in the administrative hearing. As set forth herein, the issuance of a search warrant does not necessarily require proof of refusal and the request for a lawyer, without more, does not constitute refusal. By the same token, under our holding today any refusal that was made prior to the issuance of the warrant cannot be recanted based on the holding in *Koller.*

### IV.

¶ 28 Finally, our separately concurring colleague indicates we err in determining that the right to speak to counsel prior to deciding to submit to such a test is a constitutionally guaranteed right. However, this is precisely what the Arizona Supreme Court held in *Juarez:* "Informing the driver that he may not call his attorney before taking the test misstates the law and violates the driver's right to counsel under the Sixth Amendment of the United States Constitution and Article 2, Section 24 of the Arizona Constitution." 161 Ariz. at 81, 775 P.2d at 1145. We are bound to follow that court's holdings. *State v. Long,* 207 Ariz. 140, 145, ¶ 23, 83 P.3d 618, 623 (App.2004) ("This court is bound by decisions of the Arizona Supreme Court and has no authority to overturn or refuse to follow its decisions.").

¶ 29 It is not necessary to address, as does the special concurrence, whether there is a "nexus" between any alleged violation of the request for counsel and the evidence admitted. *See State v. Moody,* 208 Ariz. 424, 446, ¶ 67, 94 P.3d 1119, 1141 (2004). Here, the evidence was properly obtained through means of a search warrant which need not be based on the refusal to give consent. *Supra* ¶¶ 14–25.

### V.

¶ 30 For the foregoing reasons, we affirm.

CONCURRING: MICHAEL J. BROWN, Presiding Judge.

HALL, Judge, specially concurring.

¶ 31 I agree with the majority that the trial court did not err by denying Stanley's motion to suppress. I write separately because I conclude that Stanley's request to speak to an attorney was a "failure to expressly agree to the test" and was therefore "deemed a refusal" pursuant to A.R.S. § 28–1321(B), thus authorizing Officer D.K. to seek a search warrant pursuant to § 28–1321(D)(1).

¶ 32 A person who operates a motor vehicle in Arizona "gives consent . . . to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration" if arrested for DUI. A.R.S. § 28–1321(A). Under § 28–1321(B), an arrested person has two choices when requested by a law enforcement officer to submit to one or more of the tests prescribed by § 28–1321(A). First, the person may consensually submit to the test or tests designated by the officer. Second, the person may withhold consent by not expressly agreeing to, and successfully completing, the designated test. Pursuant to subsection B, such a circumstance is treated as a refusal. In that event, "[t]he test shall not be given, except as provided in section 28–1388, subsection E or pursuant to a search warrant." A.R.S. § 28–1321(D)(1). As the majority notes, the ability of a law enforcement officer to obtain a search warrant compelling an arrested person to submit to a test constitutes a change from the law prior to 1990, which provided that if a person refused to submit to the designated test, "none shall be given." *See* A.R.S. § 28–691(D) (1989). Thus, an arrested person can no longer thwart a DUI investigation by simply refusing to submit to a test.

¶ 33 Given that an arrested person is no longer statutorily enabled to prevent a test from being administered by withholding consent, the majority goes astray, when it asserts, *supra* ¶ 24, that "[t]he right to speak to an attorney prior to deciding whether to submit to a test . . . is a guaranteed constitutional right." In my opinion, *Kunzler* and *Juarez*, properly understood, do not support such a broad assertion. Both of those cases were decided under the prior statutory scheme and involved scenarios in which arrestees could have contacted an attorney without interfering with the ongoing investigations. For example, in *Kunzler*, the police officer refused defendant's multiple requests to speak with an attorney after being advised

of the implied consent law and during an hour-long delay while the portable intoxilyzer unit was warming up. 154 Ariz. at 569, 744 P.2d at 670. Likewise, in *Juarez*, the court held that the defendants should have been given the opportunity to contact an attorney during the statutory twenty-minute observation period before the intoxilyzer test could be administered. 161 Ariz. at 81, 775 P.2d at 1145. Taken collectively, these and other cases stand for the rather un-extraordinary proposition that law enforcement authorities may not hinder access between a person accused of a crime and that person's lawyer unless doing so would disrupt an ongoing investigation. *Id.; Kunzler*, 154 Ariz. at 569, 744 P.2d at 670. But neither of these cases nor the right to consult with counsel granted Stanley by Arizona Rule of Criminal Procedure 6.1(a)—a right which Officer D.K. did not prevent Stanley from exercising—necessarily implies the existence of a constitutional right to consult with counsel before the state may treat non-submission as a refusal. Indeed, under the current statutory scheme, the very act of non-submission, however manifested, delays the investigation.

¶ 34 Moreover, as a practical matter, the police officer here was going to obtain a sample of Stanley's blood, be it consensually or via a search warrant authorization. Therefore, even assuming that Stanley's Rule 6.1(a) right to counsel was somehow violated, the requisite "nexus" between the violation and the evidence seized before suppression is an appropriate remedy was lacking. *State v. Moody*, 208 Ariz. 424, 446, ¶ 67, 94 P.3d 1119, 1141 (2004). As in *Moody*, "the physical evidence was seized pursuant to a valid warrant, and the sample[ ] would have been collected whether or not [Stanley] had an opportunity to speak with an attorney." *Id.* Therefore, the required nexus between the violation and the seizure is absent, and the federal exclusionary rule would not require suppression of the blood-alcohol evidence.[2]

---

2. The court distinguished the DUI line of cases on which Stanley relies by noting that "these DUI cases establish the required nexus between the violation and remedy: Denial of counsel may deprive a defendant of an opportunity to obtain exculpatory evidence and therefore justifies suppression of evidence." *Moody*, 208 Ariz. at 447,

¶ 69, 94 P.3d at 1142 (citing *McNutt v. Superior Court*, 133 Ariz. 7, 10, 648 P.2d 122, 125 (1982)). This distinction is inapplicable to Stanley's situation because she was not prevented from communicating with counsel and was not deprived of the opportunity to obtain exculpatory evidence. In any event, her attorney advised her to refuse

*See Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

¶ 35 In summary, I would hold, as did the superior court, that Stanley's failure to expressly agree to submit to the designated test constituted a refusal and authorized the officer to seek a search warrant compelling Stanley to provide a blood sample. Further, I do not interpret A.R.S. § 28–1321(D)(1) as requiring that the search warrant application set forth the fact of refusal in the affidavit. For the reasons stated, I agree with the result reached by the majority.

to submit to a blood draw without a search warrant.